Case 4:96-cv-00594 Document 38 Filed in TXSD on 06/26/97 Page 1 of 23



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**JUN 27 1997**

| | | |
|---|---|---|
| SOHAIL ALAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. H-96-594 |
| | § | |
| DR. ZAHEER AHMAD, MR. MOHAMMAD | § | |
| ZAHID, MR. SAMI-ULLAH SHARIF, | § | |
| DR. MAZOOR-UL-HAQ QAZI, DR. | § | |
| HABIB-UR-REHMAN, AND SHIFA | § | |
| INTERNATIONAL HOSPITAL, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Docket Entry #26). The Court has considered the motion and its supporting memorandum of law (Docket Entry #27), Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Docket Entry #31) and its supporting memorandum (Docket Entry #32), Defendants' Reply Memorandum of Law In Support of Motion to Dismiss the Amended Complaint (Docket Entry #33), and the applicable law. For the reasons set forth below, the Court is of the opinion that there is both subject matter and personal jurisdiction; the Court therefore **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint be **DENIED** at this time.[1]

---

[1]This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Fed. R. Civ. P. 72 (Docket Entry #15).

1

38

## I. Case Background

On October 21, 1996, the plaintiff, Sohail Alam, filed his First Amended Complaint against the defendants, Dr. Zaheer Ahmad, Mr. Mohammad Zahid, Mr. Sami-Ullah Sharif, Dr. Mazoor-Ul-Haq Qazi, Dr. Habib-Ur-Rehman, and Shifa International Hospital.[2] The allegations asserted in the complaint include breach of contract, quantum meruit, common law fraud, securities law violations/fraud, defamation, intentional interference with contractual relations, and conspiracy.

The plaintiff is a health care consultant residing in Houston, Texas. Defendant Shifa International Hospital is a Pakistani corporation, defendant Sharif is a United States citizen residing in New York, while the remaining defendants are United States citizens currently residing in Pakistan.

Defendants' Motion to Dismiss Plaintiff's Amended Complaint contends that plaintiff's amended complaint must be dismissed due to lack of personal jurisdiction, *forum non conveniens*, lack of subject matter jurisdiction, and under principles of pendent jurisdiction. The undersigned magistrate judge concludes that there is diversity jurisdiction and personal jurisdiction. As the *forum*

---

[2]At various points in the record, defendant Ahmad is referred to as "Dr. Ahmed" or "Dr. Zaheer". Similarly, defendant Rehman is often referred to as "Dr. Rahman". The record also reflects an alternative spelling of defendant Qazi's name, as "Manzoor-Ul-Haq Qazi". The Court will refer to the defendants by the names supplied in the caption.

2

*non conveniens* issue was not adequately briefed, it is **RECOMMENDED** that defendants' motion to dismiss be **DENIED** at this time[3]

## II. Analysis

Disregarding the order in which defendants raised their issues, the Court first considers the diversity jurisdiction issue and then addresses personal jurisdiction and *forum non conveniens*.

### A. Diversity Jurisdiction

Defendants argue that there is no diversity jurisdiction in this action because plaintiff has not met the $50,000[4] jurisdictional limit and because the defendants are United States citizens domiciled abroad.[5] Each component to the argument is considered in turn.

#### 1. Failure to Meet the Jurisdictional Limit

Defendants claim that the Court lacks diversity jurisdiction in that plaintiff's assertion that the amount in controversy exceeds

---

[3]Because the Court has determined that there is diversity jurisdiction, it is unnecessary to reach defendants' lack of federal question jurisdiction issue. As is noted below, however, see p. 21 infra, the Court is not satisfied with the pleading of the securities law claims and is requiring an amended pleading on these issues. Furthermore, as subject matter jurisdiction has been found, defendants' principles of pendent jurisdiction arguments are moot.

[4]Both the complaint and the amended complaint were filed prior to the effective date of the amendment raising the minimum amount in controversy to $75,000.

[5]Defendants also argue that diversity is lacking as plaintiff has failed to demonstrate that he is United States citizen. Although defendants have not made clear how this failure destroys diversity, Mr. Alam attached a photocopy of his U.S. passport, as Exhibit B, to his Memorandum In Support of Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and acknowledged his United States citizenship during his deposition (Alam Deposition, p. 13).

3

$50,000 is merely *pro forma*, that is that he has no good faith basis for his assertion. Defendants rely on a decision by the United States Court of Appeals for the Fifth Circuit, <u>Diefenthal v. Civil Aeronautics Board</u>, 681 F.2d 1039 (5th Cir. 1982), <u>cert</u>. <u>denied</u> 459 U.S. 1107 (1983). Application of <u>Diefenthal</u> to the facts of the instant case, however, does not yield the result suggested by defendants.

<u>Diefenthal</u> arose when the Diefenthals were unable to procure seating in the first class smoking section of an airplane, as had been requested and confirmed, and the flight attendant "brusquely" informed them that there were no vacancies. According to the Diefenthals, these inconveniences resulted in at least $10,000 worth of damages. In affirming the district court's dismissal for lack of diversity due to the disparity between the trivial incident and the resulting damage allegation and to the obviously perfunctory assertion of the jurisdictional minimum, the Fifth Circuit relied on <u>St. Paul Mercury Indemnity Co. v. Red Cab Co.</u>, 303 U.S. 283 (1938). In <u>St. Paul Mercury Indemnity Co.</u>, the United States Supreme Court noted that the plaintiff's good faith claim controls and that "[i]t must appear to a legal certainty that the claim is really far less than the jurisdictional amount to justify dismissal." <u>St. Paul Mercury Indemnity Co.</u>, 303 U.S. at 288 (<u>quoted in Diefenthal</u>, 681 F.2d at 1052).

<u>Diefenthal</u> is distinguishable from the case at bar. Unlike the Diefenthals' disparate damage claim, in relation to the alleged events, the allegations in Mr. Alam's amended complaint support his

4

CthPDF - www.fastio.com

assertion that damages exceeding the $50,000 minimum arise from his actions for breach of contract ($198,334), quantum meruit ($502,000), common law fraud ($2,500,000), securities law violations/fraud ($76,000), defamation ($500,000), and intentional interference with contractual relations ($500,000). In the present case, unlike <u>Diefenthal</u>, it is not inconceivable that Mr. Alam could satisfy the $50,000 minimum from the allegations he sets forth.

Defendants' challenge to the amount in controversy takes issue with plaintiff's claim for damages in the amount of $198,334 for breach of contract. Whether or not their calculations supporting this challenge are accurate, their challenge appears to overlook the other damage claims made by plaintiff.[6] Defendants' challenge to the satisfaction of the jurisdictional amount places the burden on the plaintiff, as the party who invoked the Court's jurisdiction, to support his allegation that the jurisdiction requirements are met. <u>Diefenthal</u>, 681 F.2d at 1052 (<u>quoting</u> <u>St. Paul Mercury Indemnity Co.</u>, 303 U.S. at 287, n.10). Plaintiff responded by

---

[6]Defendants base their argument solely on the breach of contract claim. Though they include a footnote asserting that "[p]laintiff's claims for fraud, quantum meruit, defamation, intentional interference with contractual relations and conspiracy are entirely without merit must [sic] be dismissed for failure to state a claim. Defendants reserve their rights to move to dismiss the state law claims (<u>see</u> Point IV)," Defendants' Memorandum of Law In Support of Motion to Dismiss the Amended Complaint, p. 23 n.24 (Docket Entry #27), defendants do not explain why these claims are not to be considered in determining whether the amount in controversy meets the jurisdictional limit.

CHIPDF - www.fastio.com

relying on his original allegations in the amended complaint.[7] A review of these allegations reflects that plaintiff has satisfied his burden of showing a good faith claim of damages in excess of the jurisdictional minimum. Consequently, this Court is of the opinion that plaintiff has satisfactorily alleged the requisite $50,000 amount in controversy for diversity jurisdiction.

## 2. **Defendants Are United States Citizens Domiciled Abroad**

Defendants also argue that there is no diversity jurisdiction in this case because the defendants, with the exception of Mr. Sharif, are United States citizens domiciled in Pakistan. The record does not support the defendants' contention.

Defendants do not dispute plaintiff's assertion that Mr. Sharif is a United States citizen domiciled in New York. Hence, there is diversity jurisdiction as to defendant Sharif. Furthermore, there is no dispute about diversity jurisdiction with regard to defendant Shifa International Hospital. Defendants' contention, then, is that diversity jurisdiction is lost because of defendants Ahmad, Zahid, Qazi, and Rehman, specifically because they are all United States citizens domiciled in Pakistan.

If a United States citizen is domiciled abroad, he/she is not a domiciliary of a state as is required for a determination of

---

[7]"Alam...has set forth specific facts regarding these claims and others (including defamation) sufficient to support damages in excess of the jurisdictional minimum. Defendants cannot be allowed to simply ignore the claims they don't like." Memorandum In Support of Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, p. 11 (Docket Entry #32).

diversity jurisdiction. <u>See</u> <u>Coury v. Prot</u>, 85 F.3d 244 (5th Cir. 1996). The Fifth Circuit has noted that:

> [a] change in domicile typically requires only the concurrence of: (1) physical presence at the new location and (2) an intention to remain there indefinitely;...or, as some courts articulate it, the absence of any intention to go elsewhere....[M]ere presence in a new location does not effect a change of domicile; it must be accompanied with the requisite intent.

<u>Coury</u>, 85 F.3d at 250 (citations omitted).

Defendants claim that Ahmad, Zahid, Qazi, and Rehman have satisfied these requirements and are domiciled in Pakistan. The Court is of the opinion that the record belies this contention.

In his affidavit, plaintiff asserts that Zahid lives in New York with his wife and family and that his children attend school there. Alam Affidavit ¶ 6. Furthermore, Zahid owns several business and real estate in the United States. <u>Id</u>. Ahmad owns businesses and real estate in the United States in partnership with Zahid and Sharif and has children and other family living in New York. <u>Id</u>. Qazi, a cardiologist at Bird Memorial Hospital, owns a home in Leesville, Louisiana and owns other real estate in Louisiana and Houston. <u>Id</u>. Rehman, another cardiologist at Bird Memorial Hospital, also owns a home in Leesville, Louisiana and owns businesses and real estate in Louisiana and Houston. <u>Id</u>.

Defendant Zahid states, in his affidavit, that he is presently living and working in Pakistan and has no immediate plans to return to the United States. Zahid Affidavit ¶ 3. Defendant Ahmad similarly states that he is presently living and working in Pakistan and has no immediate plans to return to the United States,

7

and he adds that he owns a home in Pakistan and that his immediate family lives with him. Ahmad Affidavit ¶ 3. Defendant Qazi's affidavit asserts that he is "presently living and working in Pakistan and [has] no immediate plans on returning to the United States. Indeed I own a home in Pakistan and my immediate family lives with me in Islamabad. Myself and my wife both have a full time job in Islamabad, Pakistan. My daughter is going to medica [sic] school in Pakistan." Qazi Affidavit ¶ 4. Defendant Rehman makes similar assertions: "I am presently living and working in Pakistan and have no immediate plans to return to the United States. I own a home in Pakistan and my immediate family lives with me in Islamabad. I have been working full time in Islamabad since September, 1995. My children have been attending a school in Islamabad for the same duration." Rehman Affidavit ¶ 3.

After considering the affidavits, the Court concludes that, though contested, plaintiff's allegations will be accepted as true. Plaintiff has provided specific details about the defendants' United States residences and businesses and the location of the defendants' families. Although not dispositive in and of itself, defendants do not rebut these allegations in their affidavits. Rather, all of their affidavits baldly state that they have no immediate plans to return to the United States. Three of the four defendants whose domicile is in question own homes in Pakistan and have immediate family living with them.[8]

---

[8]Defendants Ahmad, Qazi, and Rehman make these further assertions.

None of the defendants addresses plaintiff's contention that they continue to maintain residences, businesses, and other ties here in the United States. Furthermore, none of the defendants has attested to the intent to remain that is required to establish a new domicile. "No immediate plans to return to the United States" is not the same as an intent to remain in Pakistan indefinitely.[9] Hence, as the evidence is not sufficient to support the contention that the defendants residing in Pakistan changed their domicile, diversity jurisdiction has been maintained.[10] Consequently, this Court has subject matter jurisdiction.[11]

## B. Personal Jurisdiction

Defendants also argue that personal jurisdiction is lacking for two reasons. First, defendants claim that there is no specific jurisdiction in that none of the defendants purposefully availed

---

[9]Even if these assertions were equivalent, "[a] litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts." Coury, 85 F.3d at 251.

[10]The Court notes that, in determining domicile, no single factor is determinative, but that a variety of factors must be considered. Coury, 85 F.3d at 251. Defendants have neglected to include evidence on where each "exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has place of business or employment, and maintains a home for his family." Id.

If plaintiff's allegations are incorrect, defendants may file amended affidavits with their objections.

[11]As there is subject matter jurisdiction through diversity, the defendants' claim that there is no subject matter jurisdiction due to plaintiff's failure to adequately plead a federal question, violation of the securities law, will not be considered. But see, p. 21 infra.

CM/PDF - www.fastio.com

himself of the jurisdiction of the state of Texas. Second, defendants contend that personal jurisdiction is lacking in that each defendant was acting in his official capacity on behalf of the corporate defendant and not in his personal capacity. The Court is of the opinion that personal jurisdiction exists.

The proper analysis for determining whether personal jurisdiction may be maintained over a nonresident was set forth by the Fifth Circuit in <u>Asarco, Inc. and Hansa Marine Insurance Co., et al. v. Glenare, Ltd. and Anglo-Eastern Management Services, Ltd.</u>, 912 F.2d 784 (5th Cir. 1990). In order for a plaintiff to meet a challenge to personal jurisdiction asserted by a nonresident defendant, the plaintiff

> need only make a prima facie showing of jurisdiction, so that the allegations of the complaint are taken as true except as controverted by the defendant's affidavits and conflicts in the affidavits are resolved in plaintiff's favor.

<u>Id</u>. at 785 (<u>quoting</u> <u>Travelers Indemnity Co. v. Calvert Fire Ins. Co.</u>, 798 F.2d 826, 831 (5th Cir. 1986); <u>Irving v. Owens-Corning Fiberglass Corp.</u>, 864 F.2d 383 (5th Cir.) <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u>., <u>Jugometal Enterprise For Import and Export of Ores and Metals v. Irving</u>, 493 U.S. 823 (1989)).

A two-step analysis governs the inquiry into personal jurisdiction over a nonresident defendant. Absent a controlling federal statute regarding service of process, it must first be determined whether the long arm statute of the forum state permits the exercise of jurisdiction. <u>Ham v. La Cienega Music Co.</u>, 4 F.3d 413 (5th Cir. 1993). Next, it must be determined whether such

exercise comports with due process. Id.; Aviles v. Kunkle, 978 F.2d 201 (5th Cir. 1992).

Because the Texas Supreme Court has interpreted the Texas long arm statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041-.045, as conferring personal jurisdiction over nonresidents whenever consistent with constitutional due process, only the latter inquiry need be made. Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). "Due process requires that (1) the defendant have [sic] established 'minimum contacts' with the forum state; and, (2) the exercise of personal jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" Ham, 4 F.3d at 415 (citing Asahi Metal Indus. v. Superior Court, 480 U.S. 102 (1987)).

Minimum contacts can be established in two distinct ways. Specific jurisdiction attaches when the cause of action arises out of the defendant's purposeful contacts with the state, even though the contact may be a single, substantial act. General jurisdiction attaches when the nonresident defendant has engaged in continuous and systematic contact with the forum, regardless of whether there is any relation between the contact and the cause of action. Ruston Gas Turbines, Inc. v. Donaldson Company, Inc., 9 F.3d 415, 418-419 (5th Cir. 1993). The parties in the instant case do not dispute that personal jurisdiction in this case exists, if at all, on the basis of specific jurisdiction.

In order for specific jurisdiction to attach over a nonresident defendant, the defendant's activities must have been "purposefully directed" to the forum, and the litigation must have

resulted from alleged injuries that arose out of or related to those activities. <u>National Industrial Sand Association v. Gibson</u>, 897 S.W.2d 769, 773 (Tex. 1995) (<u>citing</u> <u>Zac Smith & Co. v. Otis Elevator Co.</u>, 734 S.W.2d 662, 662 (Tex. 1987); <u>see also</u> <u>Stuart v. Spademan</u>, 772 F.2d 1185 (5th Cir. 1985).[12] It is the burden of the plaintiff to establish sufficient facts to warrant the imposition of personal jurisdiction over a defendant. <u>DeMelo v. Toche Marine, Inc.</u>, 711 F.2d 1260, 1271 (5th Cir. 1983). Then, in exercising specific jurisdiction, "the court must examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." <u>Gundle Lining Construction Corp.</u>, 85

---

[12]The Fifth Circuit pointed out:

"[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."...The due-process test of foreseeability is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."...Reasonable anticipation of out-of-state litigation is delimited by the "purposeful availment" requirement set out in *Hanson v. Denckla*.... This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts...or of the 'unilateral activity of another party or a third person'....Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State.".... After deciding that a defendant purposefully established minimum contacts with the forum state, it must be determined whether maintenance of the suit comports with "'traditional notions of fair play and substantial justice.'"...The criteria of fairness require that we consider, "among other things, the interest of the state in providing a forum for the suit, the relative conveniences and inconveniences to the parties, and the basic equities."

<u>Stuart</u>, 772 F.2d at 1191 (citations and footnote omitted).

F.3d 201, 205 (1996)(citing Shaffer v. Heitner, 433 U.S. 186, 204
(1977)). After reviewing the entirety of the record, the Court is
of the opinion that plaintiff satisfied his burden of establishing
jurisdiction over the nonresident defendants.

Plaintiff alleges numerous meetings in Houston with the
various defendants to discuss and negotiate his work on the Shifa
project. First Amended Complaint, ¶¶ 15, 39 (defendant Ahmad and
Qazi), 40 and 41 (defendant Qazi), 42 (five meetings with
defendants Qazi and Rehman, two with Ahmad, two with Zahid, and one
with Sharif), and 43 (twelve meetings with defendant Qazi, eight
with defendant Ahmad, five with defendant Rehman, two with Zahid,
and one with Sharif); Alam Affidavit ¶ 2.[13] Defendants generally
deny being at many of these meetings with plaintiff.

Defendant Qazi admits that he had a few meetings with Alam in
Houston, but claims that they were only incidental to his visits to
Texas for personal reasons:

> Most of my telephone conversations with Alam took place while
> I was either in Louisiana or Pakistan. I personally met with
> Alam several times in Louisiana and Pakistan to discuss his
> work for SIH. The few meetings I had with Alam in Houston were
> only incidental to my visits to Texas for personal reasons
> (Houston being the closest Metropolitan City and Airport) for
> a single meeting of interested physicians or to meet with
> vendors of medical equipment.

Qazi Affidavit ¶ 19.

In fact, he denies half of the meetings claimed by Alam:

> More than one-half or fifty percent of the meetings Alam
> claims in his "Declaration" that I attended in Houston never
> took place. Specifically, I did not meet with Alam on

---

[13]The Court acknowledges that the mere number of contacts is
not dispositive.

> 12/14/91; 3/26/92, 5/23/92, 9/18/92, 11/21/92, 1/24/93,
> 2/28/93, 3/16/93 and 4/30/93. Dr. Rehman advises me that he
> has no recollection of being in Houston with Alam on 3/16/92
> or 1/24/93 either. Likewise, Dr. Zaheer has no recollection of
> meeting with me and Alam in Houston on 7/4/91. In fact, I
> negotiated the second phase of the consulting work with Alam
> entirely in Pakistan.

Qazi Affidavit ¶ 20.

Defendant Ahmad admits simply to being in Texas at a meeting that

Alam also attended:

> I was only in Texas once in 1991 and that was merely for the
> purpose of meeting with vendors of medical equipment. In 1992
> I was in Texas to attend a meeting of physicians who were
> interested in the development of SIH who flew in from around
> the United States, Alam also attended that meeting to report
> on the status of his work.

Ahmad Affidavit ¶ 6.

Nonetheless, though Ahmad denies negotiating Alam's contract in

Houston, he does admit to discussions with Alam about the latter's

consulting for SIH:

> As fully set forth in the accompanying Affidavit of Dr.
> Manzoor-ul-Haq Qazi ("Dr. Qazi"), Dr. Qazi and I had several
> informal discussions with plaintiff Sohail Alam regarding an
> opportunity for Alam to become engaged as a consultant for
> SIH. However, contrary to the statements in his "Declaration",
> I never met with Alam in Houston, Texas to negotiate his
> contract. Indeed, at the time of these negotiations, my time
> was divided between New York and Pakistan.

Ahmad Affidavit ¶ 5.

Defendants Zahid and Sharif, in their depositions, similarly

admit that they were in Texas and attended a meeting which the

plaintiff also attended. Defendant Zahid contends:

> The only times I was in Texas was once in 1991 for the purpose
> of meeting with vendors of medical equipment and once in 1992
> to attend a meeting of Physicians who were interested in the
> development of SIH who flew in from around the United States
> and the other professionals associated with SIH who came to

14

the meeting from around the country, Alam also attended that meeting to report on the status of his work.

Zahid Affidavit ¶ 5.

Defendant Sharif asserts:

> The only time I was ever in Houston, Texas was to attend a meeting of physicians in 1992. It was my understanding at that time that HFC/Alam were already working for SIH and that Alam was present in the meeting solely to report on the he status of his work.

Sharif Affidavit ¶ 4.

Defendant Rehman admits meeting with plaintiff in Houston, but

denies most of the alleged meetings:

> Furthermore, I did not attend most of the meetings that Alam refers to in his declaration. Specifically, I was not in Houston Texas as Alam contends on 2/7/92, 3/16/92, 1/24/93, 7/3/93 or 10/3/93. The only time I was in Texas in 1991 was for the purpose of meeting with vendors of medical equipment. In 1992 I attended a meeting in Houston of Physicians interested in developing SIH. My meeting with the staff of St. Luke's Episcopal Hospital in Houston in 1993 had nothing to do with Alam's contract. I attended this meeting at Alam's request because Alam hoped to promote his services offering referrals from Pakistan as an inducement to St. Lukes.

Rehman Affidavit ¶ 5.

Essentially, the evidence before the Court reflects a factual dispute about the existence of and purpose of meetings between plaintiff and defendants. Though all four defendants at issue here admit to being in Texas and at at least one meeting where plaintiff was also in attendance, they, with the exception of Qazi, seem to sidestep plaintiff's specific allegations of contact.

These general denials of being present at the actual time of the signing of the contract, alluded to in many of the Affidavits, are not dispositive, as the actual signing is not the only point of contention in this case. The general denials offered in the

15

Affidavits do not seem to address plaintiff's specific contentions. Furthermore, the suggestion raised by the Affidavits of defendants Qazi and Ahmad, that they merely attended a meeting that Alam also attended, is belied by the Shifa newsletter which clearly reports a detailed meeting between these two defendants and the plaintiff. The newsletter states: "Dr. Zaheer Ahmed visited Houston, Texas on June 29 with Dr. Manzoor-ul-Haq Qazi and had a detailed meeting with Mr. Sohail Alam of Health Facility Consultants for the review of Medical Equipment Planning and Facility Opening Programme being done by Mr. Alam." Alam Affidavit, Attachment 3.

This conflicting factual dispute must be resolved in favor of the plaintiff. <u>Ruston Gas Turbines, Inc. v. Donaldson Co. Inc.</u>, 9 F.3d 415, 418 (5th Cir. 1993)("When alleged jurisdictional facts are disputed, we must resolve all conflicts in favor of the party seeking to invoke the court's jurisdiction."). Thus, the evidence sufficiently reflects that the defendants purposefully availed themselves of the forum state such that the minimum contact requirement is satisfied.

As there is minimum contact, the next inquiry concerns the fair play and substantial justice requirement. The Fifth Circuit has stated:

> When determining the fundamental fairness issue this court will normally examine (1)the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.

16

Gundle Lining Construction Corp., 85 F.3d at 207 (citing Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

Although there is some burden placed on the defendants, it is not sufficient to compel the conclusion that the exercise of jurisdiction is contrary to notions of fair play and substantial justice. See Gundle Lining Construction Co., 85 F.3d at 207. Furthermore, the forum state does have an interest in the action, as it has an interest in providing for an effective means of redress for its citizens, the plaintiff has an interest in convenient and effective relief, and the judicial system has an interest in effectively resolving controversies. See Id. Hence, the minimum requirements of fair play and substantial justice have been met. Thus, the Court is of the opinion that personal jurisdiction exists over these defendants.[14]

Defendants also deny that personal jurisdiction exists because their contacts with Texas were made solely in their official capacities on behalf of the corporation. Though, generally, personal jurisdiction cannot be maintained over an individual whose contacts with the forum state were made solely in that individual's official capacity as a corporate officer for a defendant corporation over whom there is jurisdiction, see Stuart v. Spademan, 772 F.2d 1185 (5th Cir. 1985), the individual is subject to personal jurisdiction for his/her personal participation in a tort. See Union Carbide Corp. v. UGI Corp., 731 F.2d 1186 (5th Cir.

---

[14]Defendants do not argue that personal jurisdiction as to defendant Shifa International Hospital is lacking.

1984). As Alam has alleged tort actions against each defendant, for which each defendant may be individually liable, defendants' argument fails. Hence, there is personal jurisdiction against the defendants.

### C. *Forum Non Conveniens*

Defendants also contend that plaintiff's action should be dismissed on the grounds of *forum non conveniens*. Specifically, defendants point out that plaintiff already has two similar actions pending in Pakistan. Plaintiff responds that no other federal court which would be more convenient has been identified and that plaintiff would be disadvantaged as the Pakistani justice system is inferior to that of the United States.[15]

To dismiss a case on the basis of *forum non conveniens*, "the court must first determine that there is an adequate alternative forum and must then balance the private and public interest factors." Command-Aire Corp. v. Ontario Mechanical Sales and Service Inc., 963 F.2d 90 (5th Cir. 1992). As the plaintiff initially filed his action in Pakistan, there clearly is an adequate alternative forum.

---

[15]Plaintiff also claims that the *forum non conveniens* issue is outside the October 18, 1996 Order issued by the Honorable Sim Lake. Although the Court is unable to locate an October 18, 1996 Order, it is presumed that plaintiff is referring to Judge Lake's September 18, 1996 Order (Docket Entry #15). Though defendants' argument might fall outside the ambit of Judge Lake's Order, the parties have addressed the merits of the issue, and the Court is permitted to consider *forum non conveniens* sua sponte. See Panaconti Shipping Co., S.A. v. M/V Ypapanti, 865 F.2d 705 (5th Cir. 1989). Furthermore, any objections that the parties have to the consideration of this issue can be raised in their written objections.

The private interest factors to be considered include:

> the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."

Piper Aircraft Co. v. Reyno, 454 U.S. 235, n.6 (1981)(quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

It appears from the pleadings that most of the witnesses and evidence supporting plaintiff's claims and defendants' rejoinders are in Pakistan. With the exception of defendant Sharif, all of the defendants are currently residing in Pakistan. Though the plaintiff resides in Texas, the record reflects that he has traveled to Pakistan extensively and that he initiated his action there; thus, travel to Pakistan to pursue his claim does not appear to be overwhelmingly burdensome when balanced against the defendants and other corporate representatives having to travel to Texas to defend this action.

The Court also gleans from the record that most of the evidence concerning plaintiff's tort claims is undoubtedly located in Pakistan. Many of the defamatory occurrences alleged by plaintiff purportedly took place in Pakistan, and the newsletters and other communications referenced in his complaint were probably created there. Although plaintiff avers some defamation arising in various states and elsewhere and the republishing in the United States of the Pakistani defamation, most of his alleged claims arose in Pakistan. The witnesses to these events, in addition to the parties, will undoubtedly be located predominantly in Pakistan.

Plaintiff's securities law and fraud violations might involve United States law, and the interference with contractual relations claim might require evidence from some United States citizens. It appears that the majority of the evidence for the contract and tort actions, however, will come from the parties and from others in Pakistan. On balance, then, the private interests of the litigants, as ascertained from the record, suggest that Pakistan is the appropriate forum.

The public interest factors to be considered include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Piper Aircraft Co., 454 U.S. at n.6 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947).

Although there is a local interest in protecting a citizen of this forum, the local forum does not have an interest in events transpiring in Pakistan. Pakistan, on the other hand, has a large concern about actions involving one of its corporations. The record does not depict any other dispositive public interest factor in this case; on balance, then, consideration of public interest factors also appears to favor Pakistan as the appropriate forum.

Dispositive to the Court's recommendation to dismiss this action for *forum non conveniens* is the alternative available forum. Although the plaintiff's choice of forum deserves substantial weight, see Piper Aircraft Co., 454 U.S. at 243; Command-Aire Corp., 963 F.2d at 95, the Court recognizes that his first chosen

20

forum was in Pakistan.[16] Though plaintiff obviously had some faith in the Pakistani justice system, as he chose that forum, he now contends that he would be disadvantaged if he were compelled to continue in that forum. That the law of the alternative forum is less favorable to the plaintiff than that of the present forum is not sufficient to defeat a transfer pursuant to *forum non convenience.* Piper Aircraft Co., 454 U.S. at 247.

However, the Court has insufficient information and cannot make a considered judgment whether the private and public interest factors have been satisfied. Though what was gleaned suggests that dismissal of this action pursuant to *forum non conveniens* is appropriate, the parties have not adequately briefed this issue.

Furthermore, the Court believes that plaintiff's securities law claims have not been fleshed out as previously required by the Court. Though defendants' challenge to these claims pursuant to FED. R. CIV. P. 12(b)(1) is moot, as there is subject matter jurisdiction through diversity, the Court agrees with the defendants that plaintiff has not pleaded the securities law issues sufficiently to state a claim upon which relief can be granted. Properly pleaded, these claims may impact the Court's *forum non conveniens* determination.

Hence, the Court **RECOMMENDS** that defendants' motion to dismiss be **DENIED** at this time. Furthermore, it is **RECOMMENDED** that

---

[16]Although defendants contend that plaintiff has two previously filed actions pending in Pakistan, only one of the actions is reflected in the record. Qazi Affidavit ¶ 5; Hankin Affidavit, Exhibit E; Qazi Affidavit, Exhibit B.

plaintiff be given one last opportunity to amend his securities law claims, within twenty (20) days of the date that this Recommendation is adopted. It is further **RECOMMENDED** that defendants be permitted to file a supplemental motion, on the *forum non conveniens* issue, within twenty (20) days of the date that this Recommendation is adopted.

### III. Conclusion

Based on the foregoing, this Court hereby **CONCLUDES** that subject matter jurisdiction and personal jurisdiction over each defendant is maintained. Though it appears that there is a more convenient forum, the parties have not briefed the *forum non conveniens* issue adequately to enable the Court to make this determination. Hence, it **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint be **DENIED** at this time.

The Court is not satisfied with the sufficiency of plaintiff's pleading of the securities law issues. Thus, the Court further **RECOMMENDS** that plaintiff be given one last opportunity to amend his securities law claims and that defendants be permitted to file a supplemental motion on the *forum non conveniens* issue, both within twenty (20) days of the date that this Recommendation is adopted.

The clerk shall send copies of the Memorandum and Recommendation to the respective parties, who have <u>ten (10) days</u> from the receipt thereof to file written objections thereto pursuant to General Order 80-5. Failure to file written objections

CNPDF - www.fastio.com

within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objection shall be filed with the United States District Clerk, P. O. Box 61010, Houston, Texas 77208; copies of such objections shall be mailed to opposing counsel and to the chambers of the undersigned, 515 Rusk Avenue, Suite 7019, Houston, Texas 77002.

SIGNED at Houston, Texas, this 26th day of June, 1997.

NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE

23