Case 4:96-cv-00594  Document 86  Filed in TXSD on 05/11/98  Page 1 of 28

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

MAY 12 1998

MICHAEL N. MILBY, Clerk

SOHAIL ALAM, §
§
    Plaintiff, §
§
vs. § Civil Action No. H-96-594
§
DR. ZAHEER AHMAD, et al., §
§
    Defendants. §

## MEMORANDUM AND RECOMMENDATION

CAME ON for consideration the Defendants' Supplemental Motion to Dismiss Plaintiff's Second Amended Complaint (Docket Entry #63), Plaintiff's Motion for Default Judgment (Docket Entry #58) and Plaintiff's Motion for Leave to File Third Amended Complaint (Docket Entry #76). For the reasons discussed below, it is RECOMMENDED that Plaintiff's Motion for Default Judgment be DENIED, that Defendant's Motion to Dismiss be GRANTED, and that Plaintiff's Motion for Leave to File Third Amended Complaint be DENIED.

I.

## Case Background

On February 21, 1996, the Plaintiff, Sohail Alam, filed this action against Shifa International Hospital and five of its directors claiming breach of contract, quantum meruit, common law fraud, securities fraud, defamation, intentional interference with contractual relations, and conspiracy. Plaintiff is a health care consultant who resides in Houston. Defendant Shifa International Hospital is a Pakistani corporation doing business in Pakistan.



Defendants Sharif and Zahid currently reside in New York City; Defendants Rehman, Qazi, and Ahmad reside in Pakistan.

On June 21, 1996, Defendants filed a Motion to Dismiss, alleging a lack of diversity jurisdiction based on their claim that they had permanently changed their domiciles to Pakistan or had insufficient contacts with Texas to satisfy the due process requirements for personal jurisdiction. Alternatively, Defendants moved to dismiss the action on *forum non conveniens* grounds. After several rounds of briefing and the submission of often conflicting information about the Defendants' respective domiciles, the court denied the motion to dismiss. The present motion was filed addressing only the *forum non conveniens* issue.

II.

Plaintiff's Motion for Default Judgment

On August 14, 1997, the court adopted the Supplemental Memorandum and Recommendation denying Defendants' Motion to Dismiss. On September 22, 1997, Plaintiff filed the pending Motion for Default Judgment, arguing that Defendants had failed to answer or otherwise plead after the denial of their motion to dismiss. On September 30, 1997, Defendants filed the pending Supplemental Motion to Dismiss.

However, by letter agreement dated August 27, 1997, the parties agreed that Defendants' motion to dismiss for *forum non conveniens* and their motion to dismiss the securities law claim

2

were to be filed by September 30, 1997.  The letter agreement also provided for extensions of response deadlines and limited discovery on those issues.  Based on Plaintiff's agreement to extend the response deadlines, Plaintiff's motion for default judgment is frivolous.  It is RECOMMENDED that Plaintiff's Motion for Default Judgment be DENIED.

II.

## Forum non conveniens Standard of Review

Under the doctrine of *forum non conveniens*, a federal court may decline to exercise its jurisdiction where it appears that the convenience of the parties, and the interests of justice indicate that the action should be tried in another forum.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 250 (1981); Koster v. Lumbermen's Mutual Casualty Co., 330 U.S. 518, 530-31 (1947).

In Air Crash Disaster, the Fifth Circuit set forth a three-step inquiry:

(1) Is there an available and adequate forum;

(2) If so, do the relevant factors of private interest mandate dismissal, and

(3) If not, do the relevant factors of public interest mandate dismissal.

Air Crash Disaster, 821 F.2d at 1165.  Once an available and adequate foreign forum is found to exist, if the private interest factors weigh in favor of dismissal, no further inquiry need be made.  Baris v. Sulpicio Lines, Inc., 932 F.2d 1540, 1550-51 (5th

3

CHsPDF - www.fastio.com

Cir.) <u>cert.</u> <u>denied</u>, 502 U.S. 963 (1991).

"When considering a motion to dismiss for *forum non conveniens*, 'the ultimate inquiry is where the trial will best serve the convenience of the parties and the ends of justice.'" <u>Seguros Comercial Americas, S.A. v. American President Lines, Ltd.</u>, 910 F.Supp. 1235, 1244 (S.D. Tex. 1995)(quoting <u>Koster v. Lumbermen's Mutual Casualty Co.</u>, 330 U.S. 518, 67 S.Ct. 828, 833 (1947).

A. <u>Existence of Available and Adequate Forum</u>

"A foreign forum is available when the entire case and all the parties can come within the jurisdiction of that forum." <u>Robinson v. TCI/US West Communications, Inc.</u>, 117 F.3d 900, 908 (5th Cir. 1997); <u>Air Crash Disaster</u>, 821 F.2d at 1165. "A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly even though they may not enjoy the same benefits as they might receive in an American court." <u>Id.</u> The perceived amount of the recovery obtainable in the alternative forum is not a consideration in a *forum non conveniens* inquiry. <u>Neo Sack, Ltd. V. Vinmar Impex, Inc.</u>, 810 F.Supp. 829, 834 (S.D. Tex. 1993); <u>Seguros Comercial Americas v. American President Lines, Ltd.</u>, 910 F.Supp. 1235, 1246 (S.D. Tex. 1995).

1. <u>Availability of Remedy</u>

Plaintiff, Sohail Alam, filed two lawsuits in Pakistan after he filed the present action. In his first lawsuit ("Pakistan I"),

4

Alam sued Dr. Zaheer Ahmad, Mohammad Zahid, Sami-Ullah Sharif, Manzoor-ul-Haq Qazi, Habib-ur-Rehman and Shifa International Hospital, the same defendants sued in this action, for breach of four employment contracts, and fraud. Plaintiff sought money owed on the four contracts [$248,117, which included payment in the form of Shifa International Hospital stock], loss of consulting income [$1,450,000], loss of income from potential health care clients [$3,000,000], loss of income from potential consulting assignments in Pakistan [$300,000], and loss of consulting income from Shifa's new hospitals [$500,000]. In the present suit, Plaintiff seeks similar damages.

Pakistan I and the present suit allege nearly the same facts. The comparison set forth in Defendants' Supplemental Motion to Dismiss (Docket Entry #63, pp. 5-9) outlines the similarities in the allegations, which the court finds to be significant. Both the present lawsuit and Pakistan I allege the same type of damages, although the amount sought has varied slightly each time the present action has been amended.

Comparing the allegations in Pakistan I and the present suit, Plaintiff claims breach of four separate contracts. With respect to contracts 1 and 2, Pakistan I claimed:

> Plaintiff made 9 trips to Pakistan, developed, prepared and authored over 7800 pages of materials, prepared 22 sets of drawings, worked over 2800 hours on site, 2000 hours in the office, and spent over US $80,000 of his own money and developed the most advanced, state of the art hospital and an exemplary

5

> health care institution in the country - a
> country where the word "hospital
> administration and planning" is nonexistence,
> even in the universities. The fact that the
> Plaintiff used his own funds to finance this
> consulting assignment is proof in itself that
> this arrangement was a long term deal and a
> long term relationship made up of partnership,
> fame, recognition, additional assignment, and
> huge profits.

Paragraph 17 of Plaintiff's Original Complaint reads, in part:

> The Plaintiff made 9 trips to Pakistan,
> developed, prepared and authored over 7800
> pages of materials, prepared 22 sets of
> drawings, worked over 2800 hours on site in
> Pakistan, 2000 hours in the office, and spent
> over $80,000 of his own money to develop an
> advanced, state of the art hospital and an
> exemplary health care institution in Pakistan.
> Plaintiff used his own funds to finance this
> consulting assignment. Alam believed that
> this arrangement was a long term deal and a
> long term relationship that would provide
> fame, recognition, additional assignments and
> plenty of money.

Docket Entry #1.

Paragraphs 8 and 9 of Pakistan I are almost identical to paragraphs 18 and 19 of Plaintiff's Original Complaint, as they both described the work allegedly performed by Alam. While the present action alleges a quantum meruit claim, Pakistan I sought as damages the value of 5800 hours of uncompensated work performed by Plaintiff, a similar concept based on the same facts.

The present suit and Pakistan I both alleged breach of contracts concerning the third and fourth phases of the work performed by Plaintiff, including the allegation which appeared in both suits that Plaintiff was to be paid $75,000 for a feasibility

CHKPDF - www.fastio.com

study and $75,000 per year salary as chancellor of the Paramedical Educational Institute in Pakistan (¶ 2 of Pl. Orig. Compl.; ¶ 18 of Pakistan I).

Both suits alleged that Plaintiff was to be compensated $150,000 for developing a master plan strategy (¶ 25 of Pl. Orig. Compl., ¶21 of Pakistan I). Both actions alleged damages for breach of contracts in the amount of $248,117.[1]

Like the present action, Pakistan I alleged fraud, albeit in more colorful prose. In paragraph 12 of Pakistan I, Plaintiff alleged, "the Defendant's intent to defraud remains crystal clear and beyond the shadow of a doubt, that the Defendant's financial condition in 1992, at the time the stocks were pledged in lien of payment was poor and destitute." Paragraph 13 of Pakistan I claims, "that the Defendant's intent to defraud is more convincing when 2 years later, the Defendants realize (sic) the progress the facility had made as a result of Plaintiff's hard work and saw a dim light at the forever long and hard tunnel and felt the warmth of money in their pockets, the frost of bitter coldness began to appear in their faces in the very deal they made of trading stocks in exchange for professional services changed." In paragraph 14, Plaintiff states:

> That the selfish motive seized by the greed
> were to get out of the Plaintiff a facility
> that would one day be recognized as the
> largest and best hospital in Pakistan-a

---

[1]The amount claimed has been amended in later complaints.

7

> facility they would never have been able to build on their own. Their claim of allowing the Plaintiff to achieve the fame, recognition, and money was in fact, a carefully crafted ploy to induce the Plaintiff into providing them the services they could not otherwise achieve.

These allegations are rephrased in the present lawsuit wherein it is alleged that Plaintiff was defrauded by the Defendants when they (1) induced Plaintiff to spend his time, money, and reputation on the Shifa project, (2) gave false credentials about a key player in the project, (3) deliberately underestimated the scope of the services to be performed by the Plaintiff, (4) promised financial compensation and recognition which they did not intend to deliver, and (5) converted Plaintiff's plans for a health institute to their own use without recognition or compensation. (Second Amended Complaint, pp. 14-15).

Pakistan I's allegations of defamation are similar to his defamation claim in the his Original Complaint. Those allegations concern Plaintiff's belief that the Defendants disparaged his reputation when they did not give him the recognition he deserved for his work, and instead took credit themselves for Plaintiff's work product.

However, in Plaintiff's Second Amended Complaint, he additionally alleges that in May 1994, Defendant Ahmad told another person that Plaintiff's work was poor and his performance was substandard. It is also alleged that Defendant Zahid told others that Plaintiff was unskilled and an inept planner. Plaintiff

CHIPDF - www.fastio.com

claims that these two defendants referred to Plaintiff on other occasions as crazy, deceitful, greedy, a beggar and a liar, and mentally insane.

These additional allegations do not alter the court's consideration of the availability of a remedy prong of the *forum non conveniens* analysis. From what the court can glean from allegations in the complaint and affidavits attached to the present motions concerning the residency of the Defendants, all but one of the statements forming the basis of the defamation claim in Plaintiff's Second Amended Complaint were made in Pakistan.[2]

The Second Amended Complaint does allege that Defendant Rehman, in the presence of Defendant Qazi, told Plaintiff that they considered Plaintiff a beggar and a liar. Even assuming this statement occurred in the United States, statements of opinion are not actionable. "All assertions of opinion are protected by the first amendment of the United States Constitution and article I, section 8 of the Texas Constitution." Carr v. Brasher, 776 S.W.2d 567, 570 (Tex.1989). The Second Amended Complaint also fails to

---

[2]For example, Defendant Zaheer Ahmad has averred that he has resided in Pakistan for the past 12 years and is the President and Chief Operating Officer of Shifa International Hospital. Docket Entry # 79, Ex. C. Defendant Mohammad Zahid lived in Pakistan from July 1993 to January 1997. Docket Entry #79, Ex. D. Defendant Rehman moved to Pakistan in August 1995 and is named as the recipient of defamatory phone calls from Defendant Ahmad in June and November 1994 when he lived in New York. Docket Entry #79, Ex. G, Docket Entry #44. Defendant Qazi moved to Pakistan in 1992. Docket Entry #79, Ex. F. Defendant Sharif has lived in New York during the relevant period but was not named as making a defamatory statement. Docket Entry #79, Ex. E, Docket Entry #44.

CHPDF - www.fineprint.com

allege that the statement was published to a third party, a requirement for slander. See Marshall Field Stores, Inc. v. Gardiner, 859 S.W.2d 391, 396 (Tex.App.–Houston [1st Dist.] 1993, writ dism'd, w.o.j.). It is RECOMMENDED that this aspect of Plaintiff's defamation claim be DISMISSED for failure to state a claim upon which relief can be granted.

The court concludes that the remaining defamation allegations are not actionable in a Texas forum because they occurred in Pakistan. Any legal action for defamatory statements made in Pakistan must be brought in Pakistan, not the United States.[3]

For similar reasons, the court also ignores Plaintiff's allegations of federal securities act violations in this suit in determining the availability of the foreign forum. Here, Plaintiff alleges violations of federal securities laws arising out of his acceptance of stock of Shifa International Hospital in compensation for his consulting work.

In his complaint, Plaintiff alleges that from April 1991 to

---

[3]While Plaintiff claims in his response that the defamation occurred from May 1995 to May 1996 in the United States, the Second Amended Complaint only alleges defamatory statements made between May 1994 and April 1995, which must have occurred in Pakistan, with the exception of the one statement discussed above. The court can consider only those matters alleged in the Second Amended Complaint, not extraneous matters contained in other briefing.

Although Plaintiff argues in his response to the motion to dismiss that he was defamed in newsletters which were published in the United States, he can only point to one newsletter, dated May 1992, which was published in the United States, and which contained no defamatory statements. Defendants have averred that all other newsletters of Shifa International Hospital were published in Pakistan after May 1992. Plaintiff has not rebutted that averment and has failed to attach any newsletters containing the alleged defamatory statements to his response. Any defamatory statement published in Pakistan must be litigated in Pakistan.

10

July 1992, Defendants made numerous statements to him that Shifa International Hospital was a registered investment company in the United States.  Plaintiff alleges that his acceptance of stock as payment for services constitutes the sale of unregistered securities.  He also claims that he was induced to accept the stock of the hospital based on allegedly false statements made in a prospectus and by Defendants personally.

Even if true, these allegations are not actionable under federal securities laws and must be dismissed for Plaintiff's failure to state a claim upon which relief can be granted.  First, it is undisputed that Shifa International Hospital is a Pakistani corporation whose stock was not offered on a national securities exchange in the United States.[4]   Accordingly, its stock did not have to be registered with the Securities and Exchange Commission.  See generally 15 U.S.C. §§ 77b(a)(1), 77dd(b).  Laws of the United States do not apply to such transactions.

Second, even if the Defendants were selling a security which had to be registered, such action is redressable by a private cause of action pursuant to §77l within one year of the violation.  The same limitation period applies to false statements in a prospectus.  See 15 U.S.C. §77m (limitations period is one year after discovery of the violation, but no more than three years after the sale);

---

[4]In fact, stock certificates clearly showing that Shifa Internation Hospital was a Pakistani corporation are attached to Plaintiff's Second Amended Complaint as evidence and were issued to Plaintiff in 1993.

11

Landry v. All American Ass. Co., 688 F.2d 381, 390 (5th Cir. 1982). Any action in connection with statements made in 1991 and 1992 is time-barred.

In support of his argument that the Defendants have sold unregistered federal securities, Plaintiff cites a number of "facts" which he believes support his theory that Defendants have violated federal law. In that regard, the court finds that the 1985-1992 fund-raising activities for the eventual construction of the Shifa International Hospital do not, without more, raise a fact issue that there is a securities act violation. Publishing a newsletter from New York concerning the construction status of the Shifa International Hospital does not constitute evidence of a securities act violation and is not a prospectus. Setting up a tax-deductible U.S. foundation known as the Shifa Foundation does not raise a fact issue that Defendants have committed a securities act violation. The Hospital's acceptance of tax-deductible contributions is not a securities act violation. Finally, the "prospectus" that Plaintiff claims is false and misleading is simply not a prospectus at all as it does not solicit the purchase of stock; it appears to be an undated information brochure about the hospital, and contains a very limited amount of financial information.

Turning to the fraud allegations made by Plaintiff in connection with the sale of Shifa stock, Plaintiff has alleged facts in Pakistan I which would provide redress for fraudulent

12

inducement in connection with his acceptance of stock in lieu of monetary compensation. In Pakistan I, plaintiff seeks $76,333 in the form of stock of Shifa which he claims was never paid.[5] Plaintiff seeks a like amount in the present action. Plaintiff has an available forum in Pakistan for redress of his fraud allegations in connection with his acceptance of Shifa stock as compensation for his consulting work.

It is therefore RECOMMENDED that Plaintiff's allegations concerning Defendants' failure to register Shifa International Hospital stock, and Defendants' alleged misrepresentations that Shifa's stock was registered, be DISMISSED.

In his second lawsuit ("Pakistan II"), Plaintiff sued the Shifa International Hospital, the five individual defendants named in the present suit, and two additional directors of the Hospital. In that suit, Plaintiff recounted the same allegations raised in Pakistan I and sought a "winding up" of the affairs of Shifa Hospital in order that he collect on any judgment he might receive in Pakistan I. He also appears to claim that the defendants have violated fiduciary duties by mismanaging Shifa International Hospital.

In support of their contention that Plaintiff has an available and adequate forum for his allegations in Pakistan, Defendants have submitted the affidavit of Asghar Moheed Bhatti, a Pakistani

---

[5]Plaintiff also makes this same damage claim in his breach of contract cause of action.

13

attorney and recipient of an L.L.M. degree from Georgetown University. After reviewing the pleadings in all three cases, Mr. Bhatti concludes that Plaintiff has an available forum in Pakistan for these causes of action, that the actions arose in Pakistan, that the court in Pakistan can summon all witnesses, compel production of documents and grant complete relief. Mr. Bhatti also averred that the Pakistan cases are more mature than the present action, as the Plaintiff was scheduled to present evidence to the court beginning in September 1997.

While Plaintiff argues on one hand that the Pakistani actions do not involve the same facts and causes of action as the present case, he contradicts that position by stating that he filed the Pakistani actions after he filed the present action out of fear that the limitations period would run in Pakistan. By filing almost identical claims in Pakistan after he filed the present action, Plaintiff has tacitly conceded that he has an available forum for his claims in Pakistan.

Plaintiff can obtain complete relief against all defendants in Pakistan. A review of the Pakistani pleadings presented to the court shows that no defendant has contested that court's jurisdiction over him. Although two defendants do reside in the United States, Dr. Zaheer Ahmad has averred that in the event that any individual Defendant is found liable for any allegation made by Plaintiff, Shifa International Hospital has agreed to indemnify the individual Defendants for all damages paid by them to Plaintiff.

14

Therefore the court concludes that Plaintiff can obtain relief against all the Defendants, including the two U.S.-domiciled parties, in Pakistan.

The court would note that Plaintiff has a greater opportunity to collect any judgment he might receive in a lawsuit brought in Pakistan.  Pakistan I contains a prayer for relief which asks that Defendants be sent to prison if they are unable to satisfy any judgment awarded to Plaintiff.  Imprisonment for non-payment of a judgment is not an available option in the United States.  In Pakistan II, he seeks a trustee or receiver to manage Shifa International Hospital to preserve its assets in order to satisfy Plaintiff's judgment.  The winding up and appointment of a trustee are remedies unavailable in any court in the United States.

Based on a review of the present action and the Pakistan actions, it appears that Plaintiff has an available forum in Pakistan and is presently availing himself of that forum.

2.  Adequacy of Remedy

The substantive law of the foreign forum is presumed to be adequate, unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum made known to the court, plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice there.  See Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, 955 F.2d 368, 372 (5th Cir. 1992).

Arguing that a Pakistani forum is inadequate because justice is slow-moving, Plaintiff has submitted the affidavit of a former

15

Pakistani judge, Justice Zulfikarali Valiani. Justice Valiani states that when he took the bench in 1981, there were some cases pending from 1962. He opines that it may take up from ten to twenty years to obtain a judgment in Pakistan in a complicated case.

While Justice Valiani's affidavit fails to state when he left the bench, he avers that in 1991 he was given a certificate by the Texas Supreme Court to practice law in Texas as a Foreign Legal Consultant regarding Pakistani laws. He also states that he visits Pakistan once a year to visit his sisters.[6] He reports that in April of 1996, he last visited Pakistan and met with his attorney friends who reported to him a "backlog" of cases. His affidavit did not provide any detail on what the backlog was. Justice Valiani fails to state the average time a case currently remains pending before judgment. While Justice Valiani states generally that "political pressures and influences may interfere with a litigant's ability to obtain justice in the Pakistani judicial system," he does not claim that Plaintiff will be treated unfairly.

Because it appears that Justice Valiani has no current first-hand information concerning the amount of time an average case remains pending on a civil docket, the court must disregard his affidavit. His hearsay, anecdotal, and speculative testimony would not be admissible at trial and cannot be considered in determining

---

[6]Based on the former averments, the court infers that Justice Valiani left the bench by 1991 and now resides in Texas.

16

the adequacy of a remedy available in Pakistani courts.

Plaintiff has submitted several newspaper articles which chronicle various "goodwill" meetings that Defendant Ahmad as CEO of Shifa International Hospital, had with various government officials and foreign diplomats. Plaintiff's speculation that he will not be treated fairly based on these meetings is not enough to show that he will not receive a fair trial on his lawsuits.

Furthermore, the comparative amount of recovery obtainable in Pakistan has never been a factor relevant to a *forum non conveniens* inquiry. Pain v. United Tech. Corp., 637 F.2d 775, 794 (D.C. Cir. 1980), cert. denied, 454 U.S. 1128 (1981). The lack of a jury trial in Pakistan does not render Plaintiff's remedy inadequate. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 252 n.18, Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1429 (11th Cir. 1996).

Plaintiff has not shown that he will be treated unfairly or deprived of all his remedies in the courts of Pakistan. The court concludes that Plaintiff has an adequate forum in Pakistan.

B.  Private Interest Factors

1.  Deference to Plaintiff's choice of forum

Alam contends that substantial deference should be accorded to his selection of this forum. It is true that a plaintiff's choice of forum is generally entitled to greater deference when the plaintiff has chosen his home forum. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981). "Citizens or residents deserve

17

somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Reyno, 454 U.S. at 256, n.23.

Here, Plaintiff contracted to perform work which concerned the building and management of a large hospital in Pakistan and which required on site work in Pakistan. His complaint alleged that he worked over 2800 hours in Pakistan and lost the opportunity to enter into additional contracts in Pakistan. Finally, Plaintiff chose to litigate this matter in Pakistan. Plaintiff cannot litigate the same matter in two forums and select the result he likes best. Based on the foregoing, no substantial deference is due Plaintiff's initial choice of a United States forum when, within weeks, he chose to litigate the matter in the courts of Pakistan.

    2. <u>Balancing the private interests</u>

In balancing the private interests of the parties, the court must consider (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses and the costs of obtaining the attendance of willing witnesses; (3) the possibility of view of premises, (4) all other practical problems that make trial of a case easy, expeditious and inexpensive, and (5) the enforceability of a

18

judgment if one is obtained.  Delgado, 890 F.Supp. at 1366 (citing Gonzalaz v. Naviera Neptuno, A.A., 832 F.2d 876, 878 (5th Cir. 1987).

a.  Relative ease of sources of proof

The majority of this dispute concerns the alleged breach of four contracts entered into by Plaintiff and Shifa International Hospital.    Plaintiff  also  alleges  fraud  and  defamation  which occurred in Pakistan.  The hospital, all its records, employees and officers are located in Pakistan.

As outlined in Defendants' response, almost all of Defendants' witnesses [over 120] reside in Pakistan.  The court is aware that it  is  unlikely  that  the  Defendants  will  actually  call  over  one hundred witnesses to testify about this dispute.  However many will have  to  be  deposed  to  determine  the  extent  of  their  relevant knowledge.  Since the present dispute concerns the work Plaintiff did for the hospital, it appears likely that most witnesses with first  hand  information  concerning  the  work  which  was  actually performed will reside in Pakistan.  The expense of bringing these witnesses to the United States is prohibitive and their testimony cannot be compelled by the court.  Another substantial impediment for  the  Defendants  is  the  unavailability  of  visas  for  their witnesses  to  travel  for  any  purpose  to  the  United  States. Defendant Ahmad avers that it is unlikely that the United States would  grant  visas  to  most  of  the  Defendants'  witnesses  based  on past history of the Department of State.

19

On the other hand, Plaintiff listed 24 witnesses, all of whom allegedly resided in the United States. However, evidence attached to the Defendants' pleadings showed that of the twenty-four witnesses, Plaintiff did not have a complete address for one, four witnesses now resided in Pakistan, one witness resided outside of the United States, seven witnesses filed affidavits [or stated to defense counsel] that each did not possess any knowledge of the present dispute, three witnesses could not be located at the addresses provided by Plaintiff, one averred that his knowledge of the events came solely from the Plaintiff, and one witness was Plaintiff's wife.

Of the remaining witnesses, Dr. Z. Ahmad lived in Michigan and was alleged to have knowledge of the services provided by Plaintiff, Mr. Mullick shared office space with Plaintiff and was alleged to be "aware of the issues surrounding the contract and fraud," Mr. Hafiz, a resident of Ventura, California, was a health care consultant and was alleged to have "knowledge of the facts made the basis of this suit," Drs. William Staples and Paul Bruder of Houston, Texas were alleged to have "knowledge regarding the Shifa Institute of Health Sciences," and Ms. Costa was an international coordinator who was alleged to have "knowledge regarding the Shifa Institute of Health Sciences." Thus only three of Plaintiff's witnesses are present in this district.

Plaintiff's contention that all of his witnesses were residents of the United States is also belied by the Second Amended

20

Complaint wherein it is alleged that Iqbal Bhatti, Moin Haqqi, Shaukat Nawaz Raja & Associates, the Phillips Corporation, Edward Chappy, Jawaher Ahmad, Nasir Khukan, Mazhar Mufti, Dr. Masood and Masood Aziz Ayed were witnesses to the alleged defamatory statements made by Defendants. Plaintiff fails to list any of these witnesses in his disclosures. As discussed earlier, based on the timing of the alleged defamatory statements, the court believes that these witnesses are residents of Pakistan because all but one of the defamatory statements were made in Pakistan.

In weighing the relative ease of obtaining evidence and witnesses in the two forums under consideration, the court must discount the importance of any witness for whom the Plaintiff does not have a complete or current address or who disclaims knowledge of the dispute. The court must also assume that Plaintiff could obtain the presence of his wife at trial. With regard to the remaining witnesses who have information concerning the Shifa Institute of Health Sciences, the summary of the anticipated testimony provided by Plaintiff is so vague that the court cannot determine whether these witnesses have first-hand knowledge of the dispute between Plaintiff and the defendants or whether much of the knowledge is simply background information. Based on the list of witnesses present in the United States, it appears that only Dr. Ahmad and Mr. Mullik might have first hand information concerning the work done by Plaintiff. Only Mullik resides in this district. On the other hand, Defendants have shown that most of their

CHAPDF - www.fastio.com

important witnesses reside in Pakistan.  The court concludes that the ease of access to witnesses weighs in favor of dismissal.

Turning to the location of documents, Plaintiff claims, without any support, that all relevant documents are present in the United States.  Perhaps Plaintiff is only referring to his documents, which is only one part of the universe of relevant documents.  The affidavit of Defendant Ahmad outlines the extent of the documents of Shifa International Hospital which are relevant to the present contract dispute which are all located in Pakistan.  In light of the issues in this case, that is, the extent and quality of the work done by Plaintiff, it appears that a significant amount of relevant documents which would be necessary at trial are located in Pakistan.  Based on the wide variety of documents listed as relevant, it appears that Defendants would require several record custodians to authenticate the documents, as well as would require the production and self-authentication of various public records.

The court concludes that relevant documents are present in both the United States and Pakistan, however the ease of access to documents weighs in favor of dismissal because it would be easier for Plaintiff to transport his documents to Pakistan, and authenticate the documents through his own testimony than to require the Shifa International Hospital to produce and authenticate its relevant documents in the United States.

22

b.  Availability of compulsory process for attendance
of unwilling witnesses and costs of obtaining attendance
of willing witnesses

Because most witnesses are located in Pakistan, costs
considerations require that trial in Pakistan would be far more
expedient and less burdensome than trial in Texas.  Neither party
can compel Pakistani witnesses to testify in the United States.
Conducting a substantial part of the trial on deposition testimony
precludes the trier of fact from evaluating the credibility of the
witnesses.  The unfairness of the situation is even more apparent
where Plaintiff is his own main witness and the Defendants cannot
obtain necessary witnesses because of extreme expense, and/or
unavailability of a subpoena.  Even a willing witness from Pakistan
might be precluded from testifying unless the State Department
issued a visa for the witness.

c.  Other practical problems that make trial of a case
easy, expeditious and inexpensive

It is unclear whether the contract was formed in Texas or
Pakistan, or where the majority of the work required by the
contract was performed, hence the court is unable to perform a
choice of law analysis on the contract claim.[7]  The court notes

---

[7]In the Second Amended Complaint, Plaintiff avers, "In 1991, Defendants
solicited Plaintiff's assistance on the project through a series of meetings
in Houston, Texas; Leesville, Louisiana and finally Pakistan, where Plaintiff
and his wife were wined and dined."  "As a result of these meetings,
Plaintiff determined that although he would not move to Pakistan as desired by
the Defendants, he was interested in associating himself with the Shifa
Project."  Docket Entry #44, p. 6.  According to the Second Amended Complaint,
during the initial contract [April-December 1992] he traveled to Pakistan nine
times and worked over 2,800 hours on-site in Pakistan.  Docket Entry #44, p.
9, 11.

23

however, that Plaintiff has alleged that in July 1994, in Pakistan,
Defendant Ahmad told Plaintiff that he was in default of the
contract and threatened to stop payment if Plaintiff did not revise
the Master Plan as required.   Plaintiff claims that he was
fraudulently induced to additional work for which he now seeks
compensation based on threats made at this meeting.   If the
defamatory statements were made in Pakistan, then Pakistani law
would apply.[8]   If statements which allegedly fraudulently induced
Plaintiff to take certain actions were made in Pakistan, Pakistani
law would apply.

Plaintiff has spent much time discussing the contacts various
Defendants have with the United States and their early contacts
with Plaintiff which occurred outside the limitations period in the
United States.   Two defendants, Sharif and Zahid, reside in the
United States.   The other three individuals reside and work in
Pakistan at the Shifa International Hospital.   While it is true
that the three defendants who reside in Pakistan have limited
contacts with the United States via passive investments, driver's
licenses, mailing addresses and tax returns, those contacts do not

---

Attached to the Second Amended Complaint is the initial contract.   It
appears to be "submitted by" Plaintiff and signed on April 22, 1992, and
"accepted by" Shifa International Hospital on May 10, 1992.   Thus a contract
was formed upon the acceptance of Shifa International Hospital in May 1992,
however where the "acceptance" occurred was not disclosed by the document.

[8]The court notes that while Plaintiff argues in his response to the
pending motion to dismiss that he was defamed in Shifa newsletters published
in the United States, the Second Amended Complaint fails to allege any fact of
the sort.

relate to the present dispute and are not sufficient to shift the balance of the conveniences of the parties to the United States. Plaintiff's conclusory statements in his briefing that Defendants committed tortious acts in the United States and breached the contracts in the United States are contradicted by other statements which indicate that Shifa Hospital refused to pay on the contracts and several Defendants induced Plaintiff to act while in Pakistan. The relationship between the Plaintiff and the individual Defendants may have had its origin in the United States, but the current disputes are centered in Pakistan.

### d.  Enforceability of a judgment is one is obtained

Three individual defendants and the Shifa International Hospital are not residents of the United States. Plaintiff has instituted Pakistan II, a 'winding up' of Shifa's affairs in the event that he obtains a judgment against the hospital. Such a collection proceeding is not available under United States law. Based on the prayer for relief in Pakistan I and the opinion of Defendants' expert, it appears that the Defendants face prison if the judgment is not paid. This relief is not available in the United States. Thus any judgment obtained in Pakistan is more likely to be enforceable than a judgment obtained in the United States. The court concludes that this factor weighs in favor of dismissal.

### 3.  Conclusion

The court concludes that the private interest factors weigh

25

for dismissal of this case.  Plaintiff has already instituted two lawsuits in Pakistan concerning the same matters in dispute. Defendants have more witnesses and more documents in Pakistan than Plaintiff has witnesses and documents here.  The economies of the situation indicate that it would be easier and less expensive to require Plaintiff's few witnesses to appear for trial in Pakistan than to require Defendants to produce their many witnesses and documents in the United States.  Obtaining visas for Pakistani citizens for U.S. travel is a significant problem which would not be encountered by Plaintiff and his witnesses in traveling to Pakistan.  This dispute centers in Pakistan.  Because the court finds that the private interests weigh in favor of dismissal, it need not consider the public interest factors before recommending dismissal on *forum non conveniens*.

It is therefore RECOMMENDED that this action be DISMISSED, and that Plaintiff pursue his previously filed actions in Pakistan.

IV.

Plaintiff's Motion for Leave to File Third Amended Complaint

Plaintiff seeks leave of court to file a third amended complaint.  For the reasons discussed below, amendment of the complaint would be futile because the proposed amendment would be subject to a motion to dismiss.  Alday v. Patterson Truck Line Inc., 750 F.2d 375, 379-80 (5th Cir. 1985).

The proposed complaint adds two additional causes of action

26

for unjust enrichment and conversion.  Plaintiff admits that these additional causes of action are based on facts which have been pled since the Original Complaint.  For the reasons discussed above, these matters should be litigated in Pakistan.

Plaintiff also has added to the factual allegations concerning his federal securities act claim.  The additional facts alleged are the same as those argued by Plaintiff in his opposition to Defendants' motion to dismiss.  The new allegations cannot overcome the fact that the Shifa International Hospital is a Pakistani corporation whose stock was not sold on a domestic exchange.

Even if the Defendants were selling a security which had to be registered, an amendment to allow claims of misrepresentations which date from 1986 would be futile as the limitations period for such claims expired one year from the date of violation.  See 15 U.S.C. §77m.

A new allegation that a 1994 "prospectus" contained false information after Defendants transferred stock to Plaintiff fails to state a claim for relief as it lacks a causation element and would also appear to be time-barred.

Because the court finds that amendment of the complaint would be futile, Plaintiff's Motion for Leave to File Third Amended Complaint is DENIED at this time.  If the Memorandum and Recommendation concerning the *forum non conveniens* dismissal is not adopted by the court, the court will reconsider this motion.

27

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have ten (10) days from the receipt thereof to file written objections thereto pursuant to General Order 80-5. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, P. O. Box 61010, Houston, Texas 77208. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

DONE in Houston, Texas, this 11th day of May, 1998.

NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE

28